**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAWS INC. and KAWS STUDIO L.P.,

Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,

Defendants.

Case No.: 26-cv-03010

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY TRANSFER OF CONTROL OVER THE DEFENDANT INTERNET STORES, A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION**

# TABLE OF CONTENTS

Pages

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. RELEVANT FACTS .......... 3

A. Plaintiffs' Intellectual Property Protects Their Successful KAWS Brand .......... 3

B. Defendants Are Counterfeiters of KAWS Products .......... 6

1. Defendants Operate Legitimate-Looking Internet Stores .......... 8

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines .......... 8

3. Defendants Conceal Their Identities .......... 9

4. Defendants Evade Enforcement .......... 9

III. ARGUMENT .......... 11

A. This Court May Exercise Personal Jurisdiction Over Defendants .......... 12

B. Standard for a Temporary Restraining Order and Preliminary Injunction .......... 14

C. Plaintiffs Will Likely Succeed on the Merits .......... 14

1. Plaintiffs Will Likely Succeed on Their Copyright Infringement Claim. .......... 14

2. Plaintiffs Will Likely Succeed on Their Trademark Infringement and Counterfeiting Claim. .......... 17

3. Plaintiffs are Likely to Succeed on Their False Designation of Origin Claim. .......... 19

4. Plaintiffs are Likely to Succeed on Their New York Unfair Competition Claim. .......... 19

D. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......... 20

E. The Balancing of Equities Tips in Plaintiffs' Favor .......... 23

F. Issuance of the Injunction Is in the Public Interest. .......... 24

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. .......... 25

A. Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiffs' Intellectual Property Is Appropriate. .......... 26

B. Preventing the Fraudulent Transfer of Assets Is Appropriate. .......... 26

C. Plaintiffs Are Entitled to Expedited Discovery .......... 29

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case .......... 30

1. Defendants' Addresses for Service Are Not Known .......... 31

2. Defendants' Infringements of Plaintiffs' Intellectual Property Create Exigent Circumstance for Service .......... 35

V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......... 37

VI. CONCLUSION .......... 37

## TABLE OF AUTHORITIES

**Cases** Page(s)

*3M Co. v. Performance Supply, LLC*,
458 F. Supp. 3d 181 (S.D.N.Y. 2020) .......... 14, 21, 23

*ABC v. DEF,*
No. 24-cv-8341 (DLC), 2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) .......... 36

*adMarketplace, Inc. v. TeeSupport, Inc.,*
No. 13-cv-5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) .......... 29

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
No. 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) .......... 2, 13

*Allstar Marketing Group, LLC v. BackforthTradeltd,*
No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020) .......... 2, 12

*American Greetings Corp. v. Kleinfab Corp.*,
400 F. Supp. 228 (S.D.N.Y. 1975) .......... 23

*American Girl, LLC v. Zembrka*,
118 F.4th 271 (2d Cir. 2024) .......... 13

*Animale Group, Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) .......... 27, 28

*Balenciaga America, Inc. v. Dollinger*,
No. 10-cv-2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) .......... 28

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.,*
408 F. Supp. 3d 508 (S.D.N.Y. 2019) .......... 17

*Bulgari S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A,"*
No 14-cv-4819, 2014 WL 3749132 (N.D. Ill. July 18, 2014) .......... 23

*Burger King Corp. v. Majeed*,
805 F. Supp. 994 (S.D. Fla. 1992) .......... 23

*Cengage Learning, Inc. v. Doe 1*,
No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) .......... passim

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) .......... 13

*CJ Products, LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. 2011) .......... 23, 24

*CJ Products, LLC v. Concord Toys International, Inc.*,
No. 10–cv–5712 (ENV)(JO), 2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) .......................... 25

*CSC Holdings, Inc. v. Redisi*,
309 F.3d 988 (7th Cir. 2002) ........................................................................... 28

*El Greco Leather Products Co. v. Shoe World, Inc.*,
806 F.2d 392 (2d Cir. 1986) ........................................................................... 20

*EnviroCare Technologies, LLC v. Simanovsky*,
No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443 (E.D.N.Y. June 4, 2012).......................... 13

*Estee Lauder, Inc. v. Watsky*,
323 F. Supp. 1064 (S.D.N.Y. 1970) ........................................................................ 24

*Feist Publications, Inc. v. Rural Telephone Service Co.,*
499 U.S. 340 (1991)........................................................................................ 14

*Fendi Adele S.R.L. v. Filene's Basement, Inc*.,
696 F. Supp. 2d 368 (S.D.N.Y. 2010) ..................................................................... 17

*Google LLC v. Doe 1,*
No. 25-cv-10440 (JSR), 2026 WL 353660 (S.D.N.Y. Feb. 9, 2026) ....................... 31, 32, 34

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, *Inc.*
527 U.S. 308 (1999)........................................................................................ 28

*Gucci America, Inc. v. Weixing Li,*
No. 10-cv-4974 (RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ................................ 28

*Guthrie Healthcare System v. ContextMedia, Inc.,*
826 F.3d 27 (2d Cir. 2016) ............................................................................. 17

*Hermes International v. Lederer de Paris Fifth Avenue, Inc.,*
219 F.3d 104 (2d Cir. 2000) ........................................................................... 25

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ........................................................................... 37

*Hudson Furniture, Inc. v. Mizrahi*,
No. 20-cv-4891 (PAC), 2020 WL 5202118 (S.D.N.Y. Sep. 1, 2020).................................. 21

*Ideal Industries, Inc. v. Gardener Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) ......................................................................... 22

*In re Vuitton et Fils S.A.*,
606 F.2d 1 (2d Cir. 1979) ............................................................................... 2

*Intersell Ventures, LLC v. 1688 Factory Direct Store Store*,
No. 25-cv-408, 2025 WL 485715 (S.D.N.Y. Feb. 11, 2025) ............................................... 36

*ISC-Bunker Ramo Corp. v. Altech, Inc*.,
765 F. Supp. 1310 (N.D. Ill. 1990) ...................................................................... 24, 25

*Jefferson v. Johnson Publishing, Inc.*,
No. 92-cv-7011, 1992 WL 318615 (N.D. Ill. Oct. 28, 1992) ............................................... 22

*Kelly Toys Holdings, LLC. v. Top Department Store*,
No. 22-cv-558 (PAE), 2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022) ...................... 31, 32, 34

*Kipling Apparel Corp. v. Rhys*,
No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016) .................... 2, 13, 26, 37

*Klipsch Group, Inc. v. Big Box Store Ltd.*,
No. 12-cv-6283 (AJN), 2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012) ................................ 27

*Krause International, Inc. v. Reed Elsevier, Inc*.,
866 F. Supp. 585 (D.D.C. 1994) ............................................................................ 23

*Levi Strauss & Co. v. Sunrise International Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ........................................................................... 27, 28

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*,
15-cv-8459 (LGS), 2016 WL 3748480 (S.D.N.Y. July 8, 2016) ........................................ 13

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co.,*
No. 19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019) ......................... 2, 12, 13, 26

*Malarkey-Taylor Associates, Inc. v. Cellular Telecommunications Industry Ass'n*,
929 F. Supp. 473 (D.D.C. 1996) ............................................................................ 23

*Mattel, Inc. v. AnimeFun Store*,
No. 18-cv-8824 (LAP), 2021 WL 765766 (S.D.N.Y. Feb. 26, 2021) .................................. 20

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
312 F.3d 94 (2d Cir. 2002) ................................................................................ 22

*Mister Softee, Inc. v. Tsirkos*,
No. 14-cv-1975 (LTS)(RLE), 2015 WL 7458619 (S.D.N.Y. Nov. 23, 2015) ...................... 21

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
704 F. Supp. 2d. 305 (S.D.N.Y. 2010) ............................................................ 20, 24

*Next Phase Distribution, Inc. v. John Does 1–27*,
284 F.R.D. 165 (S.D.N.Y. 2012) ........................................................................... 29

*NYP Holdings v. New York Post Publishing Inc.*,
63 F. Supp. 3d 328 (S.D.N.Y. 2014) ..................... 22, 24

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
451 F.2d 1190 (2d Cir. 1971) ..................... 21, 22

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*,
No. 25-cv-2732 (MMG), 2025 WL 1276618 (S.D.N.Y. Apr. 29, 2025) ..................... 36

*Pearson Education, Inc. v. Labos*,
No. 19-cv-0487 (CM), 2019 WL 1949820 (S.D.N.Y. Apr. 23, 2019) ..................... 21

*Philip Morris USA Inc. v. Felizardo*,
No. 03-cv-5891 (HB), 2004 WL 1375277 (S.D.N.Y. June 18, 2004)..................... 20

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961) ..................... 17

*Rathmann Group v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) ..................... 37

*Reebok International, Ltd. v. Marnatech Enterprises., Inc.*,
970 F.2d 552 (9th Cir. 1992) ..................... 27, 28

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) ..................... 31, 34, 35

*Rovio Entertainment, Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015) ..................... 23

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
No. 18-cv-12069 (JPO), 2020 WL 774237 (S.D.N.Y. Feb. 18, 2020)..................... 19, 20, 23

*Shashi, Inc. v. Ramada Worldwide, Inc.,*
No. 5-cv-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005) ..................... 24

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025) ..................... 32

*Spin Master Ltd., v. Alan Yuan's Store*,
325 F. Supp. 3d 413 (S.D.N.Y. 2018) ..................... passim

*Topps Co. v. Gerrit J. Verburg Co.*,
No. 96-cv-7302 (RWS), 1996 WL 719381 (S.D.N.Y. Dec. 13, 1996) ..................... 18

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167 (7th Cir. 1997) ..................... 21

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*,
No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021)........................... 2, 12, 26, 37

*WowWee Group Ltd. v. Haoqin*,
No. 17-cv-9893, 2019 WL 1316106 (S.D.N.Y. Mar. 22, 2019)........................................... 34

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d Cir. 2012) ....................................................................................... 21, 23

*Zuru (Singapore) Pte., Ltd. v. Individuals, Corps., Ltd. Liability Cos., Partnerships, & Unincorporated Ass'ns Identified on Schedule A Hereto*,
No. 22-cv-2483 (LGS), 2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ............................... 32

**Statutes**

15 U.S.C. § 1051 et seq............................................................................................... 12

15 U.S.C. § 1114(1) ............................................................................................................ 17

15 U.S.C. § 1116(a) ............................................................................................................ 25

15 U.S.C. § 1117(a) ......................................................................................................... 3, 27

15 U.S.C. § 1125(a) ............................................................................................................ 19

17 U.S.C. § 101 et seq.......................................................................................................... 12

17 U.S.C. § 501(b) ............................................................................................................... 15

17 U.S.C. § 502.......................................................................................................... 21, 22, 25

17 U.S.C. § 503.......................................................................................................... 21, 22, 25

17 U.S.C. § 504............................................................................................................... 3, 27

28 U.S.C. § 1331.................................................................................................................. 12

28 U.S.C. § 1367(a) ............................................................................................................. 12

28 U.S.C. § 1391.................................................................................................................. 12

28 U.S.C. § 1400.................................................................................................................. 12

**Other Authorities**

4 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025).......................... 28

*5 Callmann on Unfair Competition, Trademarks and Monopolies* (4th ed.)............................... 21

Hague Convention, Art. 15 .......... 35

**Rules**

C.P.L.R. § 302(a)(1) .......... 12, 13

C.P.L.R. § 302(a)(3) .......... 12

C.P.L.R. § 6212(a) .......... 29

Fed. R. Civ. P. 26(b)(2) .......... 29

Fed. R. Civ. P. 26(d)(1) .......... 29

Fed. R. Civ. P. 4 .......... 35

Fed. R. Civ. P. 4(b) .......... 36

Fed. R. Civ. P. 4(f)(3) .......... 32

Fed. R. Civ. P. 4(k) .......... 12

Fed. R. Civ. P. 64(b) .......... 29

Fed. R. Civ. P. 65(b) .......... 11, 14

Fed. R. Civ. P. 65(c) .......... 37

Fed. R. Civ. P. 65(d)(2)(C) .......... 30

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. KAWS, INC. and KAWS STUDIO L.P. (collectively, "Plaintiffs") market a line of original artwork (the "KAWS Products") based on the images and sculptures designed by renowned artist Brian Donnelly, who goes by the pseudonym KAWS. The KAWS Products are the subject of Plaintiffs' copyrights (the "KAWS Copyrights"), including U.S. Copyright Office Registration Nos. VA 2-180-272 and VA 2-182-652, as well as the KAWS trademarks, which are covered by U.S. Trademark Registration Nos. 6,046,763; 6,047,656; 6,102,259; 6,102,260; 6,116,823; 6,852,850; and 6,997,015 (the "KAWS Trademarks").

Defendants have violated Plaintiffs' intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the KAWS Products. As the examples below and in the Complaint make clear, this is not a close case; Defendants are blatantly copying the KAWS Copyrights and KAWS Trademarks and selling knock-off KAWS Products as if they were genuine. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores").

As is common with these sorts of ecommerce counterfeiters, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs have filed this action to combat Defendants' infringement and counterfeiting of Plaintiffs' registered copyrights and trademarks, as well as to protect consumers from unknowingly purchasing counterfeit KAWS Products over the internet. In that regard, Plaintiffs seek to enjoin Defendants' ongoing unlawful activities, and Plaintiffs respectfully

[1] The Defendants are a collection of foreign ecommerce counterfeiters, identified in Schedule A attached to the Complaint.

request that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products bearing, using, or infringing upon Plaintiffs' KAWS Copyrights or KAWS Trademarks (the "Counterfeit Products");

(2) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiffs' right to an equitable accounting;

(3) expedited discovery allowing Plaintiffs to inspect and copy Defendant's' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Products, as well as of Defendants' financial accounts;

(4) permission to effectuate service by electronic mail and electronic publication; and

(5) an order against Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiffs' well-pleaded allegations, which are supported by the Declarations submitted in connection with this Application, make clear that such relief is necessary and proper. First, Plaintiffs have demonstrated a strong likelihood of success on the merits. Plaintiffs own the KAWS Copyrights and KAWS Trademarks and are the distributors of genuine KAWS Products. Defendants' unauthorized use of Plaintiffs' copyrights and trademark to sell Counterfeit Products has irreparably harmed and continues to irreparably harm Plaintiffs by diminishing Plaintiffs'

---

[2] *See, e.g.*, *Lindsey Adelman Studio, LLC v. ZORA Lighting Co.,* No. 19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Mktg. Grp., LLC v. BackforthTradeltd,* No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* No. 16-cv-990 (RJS)*,* 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Allstar Mktg. Grp., LLC v. 53 Romantic House Store*, No. 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils*, *S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

goodwill in their products, damaging Plaintiffs' reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiffs for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products, in addition to promoting general respect for copyright and trademark laws. The public has a right to know what it is purchasing.

Further, a prejudgment asset freeze is also proper since Plaintiffs seek an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiffs' legitimate interests in the KAWS Copyrights, KAWS Trademarks and KAWS Products. Accordingly, Plaintiffs respectfully request entry of its proposed order in its entirety.

## II. RELEVANT FACTS

### A. Plaintiffs' Intellectual Property Protects Their Successful KAWS Brand

Plaintiffs market a line of artwork, the KAWS Products, based on the original designs of artist Brian Donnelly, known as KAWS. *See* Declaration of Gen Watanabe (the "Watanabe Decl.") ¶ 7. Much of Mr. Donnelly's art involves the repeated use of a cast of figurative characters and motifs that appear in a variety of settings and poses. *Id.* ¶ 8. Many KAWS works involve a distinctive shared visual and conceptual vocabulary involving skull-and-crossbones heads and/or

X eyes. *Id.* Among the most notable KAWS works are "Companion," a cartoonish character featuring the trademark KAWS skull, bones, and X eyes, and "BFF," a fuzzy creature featuring some of the same visual motifs who is often depicted alongside Companion:





*Id.*

The KAWS Products have achieved stunning commercial success and recognition. Mr. Donnelly "has become a bone fide cultural phenomenon in recent years, growing his oeuvre from limited-edition toys to multi-million dollar paintings while setting up lucrative collaborations with brands like Dior and UNIQLO."[3] He was ranked #29 in ArtReview's 2021 "Power 100" list of the most influential people in the contemporary art world, which described him as "[a] brand name through commercial partnerships and celebrity supporters that few can match."[4] Mr. Donnelly's work has continued to grow in influence since then, and his KAWS artwork will be exhibited

---

[3] Sarah Cascone, *As His Market Explodes, KAWS Parts Ways With Longtime Dealer Perrotin to Show Exclusively with Skarstedt*, Artnet News (July 3, 2019) https://news.artnet.com/market/kaws-leaves-perrotin-skarstedt-1592062.

[4] *Power 100: Most influential people in 2021 in the contemporary artworld*, Art Review (https://artreview.com/artist/kaws/?year=2021) (last visited Mar. 24, 2026).

across the entirety of the New York Botanical Garden next year.[5]

Since their introduction, the KAWS Products have been and are the subject of substantial and continuous marketing and promotion by Plaintiffs in the industry and to consumers. For example, Plaintiffs promote KAWS Products through its website (https://kawsone.com/), through the Skarstedt Gallery, and by showing works at international art fairs such as Art Basel Miami Beach. *Id.* ¶ 9. Further, Plaintiffs extensively promote KAWS Products on social media such as Instagram (over 4.4 million followers). *Id.* Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the KAWS Products. *Id.* As a result, as the New York Times Magazine observed, "Companion is a brand logo, and a successful one at that—not quite as recognizable as the Nike swoosh, but give it time."[6] Indeed, products embodying either or both of the KAWS Copyrights and the KAWS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs. For example:

a. In a February 9, 2021 profile, the New York Times Magazine described Mr. Donnelly as "an increasingly recognizable sight at major art institutions," observed that "you could make the argument that Donnelly is the most beloved contemporary artist alive today," and "a level of enthusiasm among his fans usually reserved for actual pop stars. In the summer of 2019, when Donnelly debuted a new T-shirt line with Uniqlo that featured his characters, the release caused near riots in multiple malls across mainland China." New York Times Magazine, *supra* note 6.

b. In 2021, the Brooklyn Museum showed a major exhibition, "KAWS: WHAT PARTY," featuring Mr. Donnelly's works in "a sweeping survey featuring more than one hundred broad-ranging works, such as rarely seen graffiti drawings and notebooks, paintings and sculptures, smaller collectibles,

---

5 Richard Whiddington, *KAWS's Colossal Figures Are Taking Root at the New York Botanical Garden*, Artnet News (July 15, 2025), https://news.artnet.com/art-world/kaws-take-over-new-york-botanical-garden-2668006.

6 M. H. Miller, *The Surprising Ascent of KAWS*, The New York Times Magazine (Feb. 9, 2021), https://www.nytimes.com/2021/02/09/magazine/the-surprising-ascent-of-kaws.html.

furniture, and monumental installations of his popular COMPANION figures."[7]

c. In 2025, Artnet named Mr. Donnelly as the 7th highest selling living American Artist, noting that "Crowds flocked to his 2021 Brooklyn Museum exhibition," and that, in 2019, one of Mr. Donnelly's works sold for almost 15 times Sotheby's already high estimate for the work.[8]

Plaintiffs safeguard their brand and investment in the KAWS Products by way of intellectual property protections. Plaintiffs own all exclusive rights for the KAWS Copyrights, including without limitation, the rights to reproduce the copyrighted designs in copies, to prepare derivative works based upon the copyrighted designs, and to distribute copies of the copyrighted designs to the public by sale or other transfer of ownership, or by rental, lease, or lending. *Id.* ¶ 4. Plaintiffs are also the registered owners of the KAWS Trademarks, which have been continuously used and never abandoned. *Id.* ¶ 5.

### B. Defendants Are Counterfeiters of KAWS Products

The success of the KAWS Products has resulted in significant counterfeiting of the same. Watanabe Decl. ¶ 11. Plaintiffs have identified numerous Defendant Internet Stores that sell Counterfeit Products from foreign countries to consumers in this Judicial District. *Id.* ¶ 15.

For example, here are some images of genuine KAWS Products incorporating the KAWS Copyrights and the KAWS Trademarks:

---

[7] *KAWS: WHAT PARTY*, Brooklyn Museum, https://www.brooklynmuseum.org/exhibitions/kaws_what_party (last visited Mar. 19, 2026)

[8] Brian Boucher, *Who Are the 10 Top-Selling Living American Artists?*, Artnet News (Sep. 29, 2025), https://news.artnet.com/market/10-top-selling-living-american-artists-2688764.





Watanabe Decl. ¶ 8.

And here are images of some counterfeits sold by the Defendants:






Watanabe Decl. Ex. 3 Part 2 p. 12, Part 3 p. 59.

Internet websites like the Defendant Internet Stores contribute to the hundreds of billions

of dollars of infringing goods sold each year and pose a threat to economic growth and innovation across the world. *See* Declaration of Christopher Tom (the "Tom Decl.") ¶ 2 and Ex. 1. For instance, according to an intellectual property rights seizures-statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *Id.* ¶ 3 and Ex. 2.

1. Defendants Operate Legitimate-Looking Internet Stores

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine KAWS Products. Watanabe Decl. ¶ 21. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon, eBay and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* But Plaintiffs have not licensed or authorized Defendants to use the KAWS Copyrights or KAWS Trademarks and none of the Defendants is an authorized retailer of genuine KAWS Products. *Id.* ¶ 19.

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also deceive unknowing consumers by using the KAWS Copyrights and KAWS Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for KAWS Products. Watanabe Decl. ¶ 23. Additionally, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and

misdirect consumers searching for genuine KAWS Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.*

3. Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Watanabe Decl. ¶ 24. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete or fail to include cities or states. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 25. The Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated. *Id.*

4. Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. Watanabe Decl. ¶ 26. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they

receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as marketplace platform accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *Id.* ¶ 27. Further, such counterfeiters typically maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiffs' well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants actively consort to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the KAWS Copyrights and the KAWS Trademarks in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. If Defendants provide additional credible information regarding their identities, Plaintiffs intend to take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiffs' reputation and the goodwill symbolized by the KAWS Copyrights and KAWS Trademarks. Watanabe Decl. ¶¶ 28–33. To stop Defendants' sale of Counterfeit Products, Plaintiffs respectfully request that this Court issue a temporary restraining order ordering, among other things, the stop of any listings or sale of products infringing upon the KAWS Copyrights and KAWS Trademarks and the freezing of Defendants' assets. Without the relief requested by Plaintiffs' Application, Defendants' unlawful activity will continue unabated, and Plaintiffs and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the KAWS Copyrights and KAWS Trademarks via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiffs by deceiving consumers into believing that the Counterfeit Products for sale on Defendants' websites are sponsored or endorsed by Plaintiffs. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the KAWS Copyrights and KAWS Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*,

*Weili Fang,* 2021 WL 1249631, at *2 ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio*, 2019 WL 7599931, at *2 ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the trademark infringement, copyright infringement, and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. <u>This Court May Exercise Personal Jurisdiction Over Defendants</u>

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores transacted business in New York by accepting orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Courts in the Southern District of New York regularly exercise personal jurisdiction over websites using registered copyrights and/or trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *See Weili Fang,* 2021 WL 1249631, at *1; *BackforthTradeltd*, 2020 WL 6700503, at *1–2

(preliminary injunction order after granting TRO); *53 Romantic House Store*, 2020 WL 6700481, at *1–2 (preliminary injunction order after granting TRO); *Lindsey Adelman Studio*, 2019 WL 7599931, at *1; *Cengage Learning*, 2018 WL 2244461, at *1; *Kipling Apparel Corp.*, 2016 WL 8814345, at *1–2.

Similarly, this Court has exercised personal jurisdiction over defendants who have offered and sold counterfeit and infringing products through third-party stores on online marketplaces such as Amazon, even though these stores have claimed they do control their storefronts in the same manner independent websites do. *See Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) Despite that alleged lack of control, courts can still assert jurisdiction over "internet sellers who use an internet storefront like Amazon" when such sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012).

Further, the Second Circuit recently affirmed that courts in this Judicial District could exercise personal jurisdiction over an internet store based in China that accepted orders for counterfeit dolls to be shipped to New York under C.P.L.R. § 302(a)(1), even though the orders were later cancelled and the product was never shipped into New York. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024). As that court explained, the "single act" requirement to establish personal jurisdiction in New York does not require actual shipment of a product to New York but only a transaction, even if that sale was later cancelled and refunded. *Id.* at 277–278 (clarifying that its decision in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) did not depend on the shipment of good but "rather on the fact that a single act can potentially suffice for establishing personal jurisdiction" in New York).

As detailed in the Complaint and in the Watanabe Decl., Plaintiffs' investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this Judicial District. *See* Watanabe Decl. ¶ 16. Exhibit 3 to the Watanabe Decl. contains screenshots from each Defendant Internet Store reflecting the marketing and ability to order Counterfeit Products to the Southern District of New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

### B. Standard for a Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiffs; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning*, 2018 WL 2244461, at *1 (quoting Fed. R. Civ. P. 65(b)(1)).

### C. Plaintiffs Will Likely Succeed on the Merits

#### 1. Plaintiffs Will Likely Succeed on Their Copyright Infringement Claim.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Copyright infringement, like trademark

infringement, is a strict liability offense. *Spin Master Ltd., v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018).

Here, Plaintiffs are likely to succeed on the merits of their copyright infringement claim. First, Plaintiffs own all exclusive rights in the KAWS Copyrights. Watanabe Decl. ¶ 4; 17 U.S.C. § 501(b) (noting the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiffs have shown that Defendants have made unauthorized copies of Plaintiffs' KAWS Copyrights, and/or, alternatively, Defendants' representations of Plaintiffs' KAWS Copyrights in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiffs' KAWS Copyrights and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiffs' copyrights for the KAWS Products. Watanabe Decl. ¶ 12. As just one example, Defendants deceive unknowing consumers by using the KAWS Copyrights without authorization within the products sold at and product photographs displayed at the Defendant Online Stores to attract customers as follows:

*Exemplary Images of Plaintiffs' Registered Copyright Works*







*Compared to Exemplar Counterfeit KAWS Products Sold by Defendants*






Overall, it is clear that Defendants have copied Plaintiffs' copyrights without Plaintiffs' consent.

2. Plaintiffs Will Likely Succeed on Their Trademark Infringement and Counterfeiting Claim.

Defendants are liable for trademark infringement and counterfeiting under the Lanham Act if they, "without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts analyze trademark infringement claims under the Lanham Act under a two-prong test: (1) whether the Plaintiffs' mark is entitled to protection and (2) whether Defendant's use of the mark is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016) (citing cases); *Spin Master*, 325 F. Supp. 3d at 420; *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.,* 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

"The first prong is satisfied by showing that a mark is valid and registered, owned by a registrant, and that the registrant has the exclusive right to use the mark in commerce." *Spin Master*, 325 F. Supp. 3d at 421. A valid certificate of registration of the asserted mark satisfies this standard. *BBK Tobacco & Foods*, 408 F. Supp. 3d at 520.

Once a plaintiff has established that its mark is entitled to protection, courts in this Circuit apply the eight "*Polaroid* factors" balancing test to determine whether the defendant's use of the mark is likely to cause confusion. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Because counterfeit marks are inherently confusing, however, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing.'" *Spin Master*, 325 F. Supp. 3d at 421 (quoting *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (citing cases); *Topps Co. v. Gerrit J. Verburg Co.*, No. 96-

cv-7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors."). "The sale of counterfeit goods is sufficient use to establish liability." *Spin Master*, 325 F. Supp. 3d at 422.

On the first prong, Plaintiffs' KAWS Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The KAWS Trademarks have been continuously used since at least 1999 and Plaintiffs have promoted and continue to widely promote the KAWS Trademarks in the industry and to consumers. Watanabe Decl. ¶ 9. The registrations for the KAWS Trademarks are valid, subsisting, and in full force and effect. *Id.* ¶ 5 & Ex. 2. The registrations for the KAWS Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the KAWS Trademarks pursuant to 15 U.S.C. § 1057(b). Further, Plaintiffs have not licensed or authorized Defendants to use the KAWS Trademarks, and none of the Defendants is an authorized retailer of genuine KAWS Products. *Id.* ¶ 19.

Second, Plaintiffs have established a likelihood of confusion. The Defendants are selling Counterfeit Products using counterfeit marks identical to or substantially indistinguishable from the KAWS Trademarks, and in respect of goods identical to the genuine KAWS Products. Due to their long-standing use and wide acceptance by the public, the KAWS Trademarks have become famous and associated with high quality KAWS Products. The KAWS Trademarks are distinctive when applied to the KAWS Products. The marks signify to consumers that the products come from Plaintiffs and are manufactured to the highest quality standards. Because the counterfeit goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine KAWS Products or are sponsored or endorsed by Plaintiffs. Moreover,

Defendants are intentionally using the KAWS Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are manufactured by or emanate from Plaintiffs. Defendants are purposefully attempting to benefit and trade off Plaintiffs' goodwill and reputation.

Plaintiffs have thus established that they have a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

3. <u>Plaintiffs are Likely to Succeed on Their False Designation of Origin Claim.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-cv-12069 (JPO), 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *Spin Master*, 325 F. Supp. 3d at 423. Because the KAWS Trademarks are registered marks, and Plaintiffs have established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, and a likelihood of success on the merits for Plaintiffs' false designation of origin claim is also established.

4. <u>Plaintiffs are Likely to Succeed on Their New York Unfair Competition Claim.</u>

The elements of an unfair competition claim "under New York common law mirror the Lanham Act claims except that unfair competition requires an additional showing of bad faith." *Ferragamo*, 2020 WL 774237, at *4 (internal quotations and citations omitted). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." *Spin Master*, 325 F. Supp. 3d at 424 (internal quotations and citations

omitted). "'Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark.'" *Ferragamo*, 2020 WL 774237, at *4 (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03-cv-5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004); *Mattel, Inc. v. AnimeFun Store*, No. 18-cv-8824 (LAP), 2021 WL 765766, at *7 (S.D.N.Y. Feb. 26, 2021) (same); *Spin Master*, 325 F. Supp. 3d at 424 (citing cases).

Because Plaintiffs have established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, bad faith is presumed, and therefore Plaintiffs have established a likelihood of success on the merits for their New York Unfair Competition claim.

### D. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes either a copyright or a trademark. Here, because Defendants have made unauthorized use of both the KAWS Copyrights and KAWS Trademarks, Plaintiffs have been irreparably harmed and will continue to be so harmed unless the Court enjoins Defendants' infringement.

In the context of trademark infringement, it is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d. 305, 325 (S.D.N.Y. 2010). When infringement leads to confusion, "the requisite irreparable harm is established as a matter of course." *Id.* at 325–26. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As such, the inability of the trademark holder to control

the quality of the infringing goods sold constitutes irreparable harm, *3M Co.,* 458 F. Supp. 3d at 192, and monetary damages are likely to be inadequate compensation for such harm. *See also 5 Callmann on Unfair Competition, Trademarks and Monopolies* § 23B:4 (4th ed.).

While loss of goodwill is "more commonly associated with trademark cases, [] it is also applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir. 1997). In the Second Circuit, courts have found irreparable harm in copyright cases where the infringement "would substantially diminish the value" of the work, "losses would be difficult to measure," and "monetary damages would be insufficient to remedy the harms." *Hudson Furniture, Inc. v. Mizrahi*, No. 20-cv-4891 (PAC), 2020 WL 5202118, at *6 (S.D.N.Y. Sep. 1, 2020) (citing *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012)). It is well settled, for example, that using another's copyrights to create consumer confusion and loss of goodwill constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *See id.* (noting "harm to [a] brand, consumer confusion, and loss of goodwill . . . constitute[] irreparable harm"); *Pearson Educ., Inc. v. Labos*, No. 19-cv-0487 (CM), 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019); *see also Mister Softee, Inc. v. Tsirkos*, No. 14-cv-1975 (LTS)(RLE), 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services"); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement and enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Indeed, irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

In the context of copyright infringement, the Second Circuit has held that the harm to the plaintiff's property interest is irreparable in light of possible market confusion. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002) ("Since [the defendant] sells essentially the same product as [the plaintiffs] to the same market, it will obviously suffer considerable loss if [the defendant] disseminates its [infringing products], because each sale of an [infringing product] probably results in one less sale of the [plaintiffs' product]. [Plaintiffs] thus satisfies the 'irreparable harm' prong of the preliminary injunction standard."); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Further, courts have held that "'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods," *Jefferson v. Johnson Publ'g, Inc.*, No. 92-cv-7011, 1992 WL 318615, at *2 (N.D. Ill. Oct. 28, 1992) (citing cases), and that monetary damages are likely to be inadequate compensation for such harm. *See Omega Importing*, 451 F.2d at 1195; *see also Ideal Indus., Inc. v. Gardener Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Here, Defendants' unauthorized use of the KAWS Copyrights and KAWS Trademarks, along with their substantial efforts to mislead and confuse consumers, have irreparably harmed and continue to irreparably harm Plaintiffs through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Watanabe Decl. ¶¶ 28–33. The extent of the harm to Plaintiffs' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237,

at *5; *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (the extent of the harm to plaintiffs resulting from "[i]njecting the market with counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law.").

### E. The Balancing of Equities Tips in Plaintiffs' Favor

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiffs'] brand." *3M Co.,* 458 F. Supp. 3d at 197; *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 287 (2d Cir. 2012) ("an […] infringer cannot complain about the loss of ability to offer its infringing product"); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). If a "defendant appears to be a brazen infringer," a defendant should receive little equitable consideration from the Court. *Am. Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 228, 234 (S.D.N.Y. 1975); *see also Bulgari S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014) ("As willful infringers, Defendants are entitled to little equitable consideration"); *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). ("When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."). In that regard, where the evidence shows that a defendant has knowingly engaged in infringing activities, "it follows that the defendant is not legally harmed by the fact that it cannot continue [its misconduct] even if this ultimately puts [the defendant] out of business." *WPIX, Inc.*, 691 F.3d at 287; *see also Rovio Ent.*, 97 F. Supp. 3d at 547; *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived.") (internal quotation marks omitted); *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996) ("the balance of harms cannot favor a defendant whose injury results from the

knowing infringement on the plaintiff's trademark."); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiffs' favor.

**F. <u>Issuance of the Injunction Is in the Public Interest.</u>**

An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity." *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332–33 (N.D. Ill. 1990) (citation omitted). Further, federal courts have long held that in addition to protecting the property rights of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.") (internal citations omitted); *NYP Holdings*, 63 F. Supp. 3d at 342 (consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 5-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

Here, an injunction is in the public interest because it will stop Defendants from violating federal intellectual property law and prevent consumer confusion. "[I]t is uncontested that there exists a strong policy in favor of defending copyrights" and Plaintiffs "assert an action to enforce their U.S. copyrights, an area in which the U.S. has a strong public interest." *CJ Prods. v. Snuggly Plushez*, 809 F. Supp. 2d at 146 (internal citations and quotations omitted). Further, the public is

currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiffs' approval and endorsement. An injunction serves the public interest in this case because "[t]rademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107–08 (2d Cir. 2000); *see also ISC-Bunker Ramo Corp*., 765 F. Supp. at 1332–33 (N.D. Ill. 1990) (injunction serves the public interest by preserving the integrity of the copyright laws); *CJ Prods. LLC v. Concord Toys Int'l, Inc.*, No. 10–cv–5712 (ENV)(JO), 2011 WL 178610, at *6 (E.D.N.Y. Jan. 19, 2011) ("In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the KAWS Copyrights and KAWS Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

The scope of the injunctive relief sought by Plaintiffs here is appropriate under Rule 65, the Lanham Act, and the Copyright Act. In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark" 15 U.S.C. § 1116(a); see also 17 U.S.C. §§ 502, 503

(providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

### A. Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiffs' Intellectual Property Is Appropriate.

Plaintiffs request a temporary injunction requiring Defendants to immediately cease all use of either the KAWS Copyrights or KAWS Trademarks on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to KAWS Copyrights and KAWS Trademarks and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the KAWS Copyrights and KAWS Trademarks.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiffs are currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931; *Cengage Learning,* 2018 WL 2244461; *Kipling Apparel Corp.,* 2016 WL 8814345.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiffs also request an *ex parte* restraint of Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired. Plaintiffs have good cause to suspect the Defendants are residents of China, India, Malaysia and Turkey. See Declaration of Yingchun Hou ("Hou Decl.") Ex. 1, Watanabe Decl. Ex. 3. In

Plaintiffs' experience, foreign merchants selling counterfeit products will operate multiple credit card and third-party payment processing accounts, so they continue operating in spite of efforts to prevent their illegal actions. Watanabe Decl. ¶ 27. Further, counterfeiters such as Defendants will typically maintain offshore bank accounts and will move from their third-party payment processing accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.* Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Plaintiffs

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, the Lanham Act provides that Plaintiffs are entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a)(1); *see also* 17 U.S.C. § 504 ("The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."). Plaintiffs' Complaint seeks, among other relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable

authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiffs' request for a prejudgment asset freeze to preserve the relief sought by Plaintiffs.

This District previously entered an asset restraining order in a copyright and trademark infringement case brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning,* 2018 WL 2244461, at *3–4. The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329–33 (1999)); *see also Gucci Am., Inc. v. Weixing Li,* No. 10-cv-4974 (RJS), 2011 WL 6156936, at *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same), *see also Balenciaga Am., Inc. v. Dollinger*, No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010) (finding because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets); *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l, Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 998 (7th Cir. 2002) ("Since the assets in question here were the profits of the [defendants] made by unlawfully stealing [plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025).

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen,

Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.[9]

### C. Plaintiffs Are Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1–27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib*., 284 F.R.D. at 171.). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank

---

[9] Alternatively, the Court may grant a pre-judgment attachment of Defendants' domestic assets under Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a). Rule 64 authorizes "[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The rule specifically mentions attachment as an available remedy. Fed. R. Civ. P. 64(b). And the C.P.L.R. permits attachment upon a showing "that there is a cause of action, that it is probable that the plaintiffs will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiffs." C.P.L.R. § 6212(a). Here, Plaintiffs will succeed on the merits for the reasons given above, and attachment is appropriate for either of at least two reasons. First, C.P.L.R. § 6201(1) authorizes attachment if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." And second, C.P.L.R. § 6201(3) permits attachment if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, the Defendants appear to be foreign entities, and there is a substantial risk that they will remove assets outside of the jurisdiction absent injunctive relief or attachment.

and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order.

Plaintiffs respectfully request expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiffs' seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

### D. <u>Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case</u>

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs request authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, the papers supporting this Application, and any other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "<u>Link</u>"). Plaintiffs submit that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement. *See Google LLC v. Doe 1,* No. 25-cv-10440 (JSR), 2026 WL 353660, at *2 (S.D.N.Y. Feb. 9, 2026); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). This Court has held that service through email and website publication is "reasonably calculated, under all the circumstances, to apprise [defendants] of the pendency of the action." *Google LLC*, 2026 WL 353660, at *2 (quoting *Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22-cv-558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022)). Further, the Ninth Circuit in *Rio Properties* held, "[w]ithout hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiffs' experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to Amazon, eBay, Etsy, Shein and Walmart and other third-party payment processers to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from Amazon, eBay, Etsy, Shein and Walmart is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of counterfeit products. *See* Watanabe Decl. ¶ 20. Authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

1. <u>Defendants' Addresses for Service Are Not Known</u>

Plaintiffs have good cause to suspect the Defendants are residents of China, India, Malaysia and Turkey. *See* Hou Decl. Ex. 1. The United States, the People's Republic of China, the Republic of India, and the Republic of Turkiye are signatories to the Hague Convention on the Service

Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention").[10] *See* Tom Decl. ¶ 4. However, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.* ¶ 4 & Ex. 3; *see also Google LLC*, 2026 WL 353660, at *1 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants); *Kelly Toys Holdings*, 2022 WL 3701216, at *9 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants and could serve defendants via electronic methods after *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025)); *Zuru (Singapore) Pte., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 22-cv-2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (finding electronic service was proper under Rule 4(f)(3) when defendants did not provide accurate physical addresses); *Cengage Learning*, 2018 WL 2244461, at *4–5 (same).

In this case, Plaintiffs, through their representatives, investigated the feasibility of effecting service of physical documents on the Defendants utilizing the Amazon, eBay, Etsy, Shein and Walmart marketplace platforms. Specifically, Plaintiffs have investigated the viability of serving this set of defendants with physical documents. Plaintiffs have utilized a specialized investigative firm, Panoramic Consulting Ltd. ("Panoramic"), with over 15 years of experience researching online merchants in China in addition to extensive experience investigating online merchants located in India, Turkey, Malaysia and other countries. *See* Hou Decl. ¶¶ 3–4. Panoramic conducted a multi-layered inquiry into each Defendant's purported physical address and contact information as listed on their seller/store profile pages. *Id.* ¶ 5. Panoramic performed

[10] One of the Defendants is located in Malaysia, a nation that is not a signatory to the Hague Service Convention. This court has previously held that Defendants located in non-signatory countries can be served through email and website publication under Fed. R. Civ. P. 4(f)(3). *Google LLC*, 2026 WL 353660, at *1–2.

comprehensive searches using multiple independent data sources, including Tianyancha, a major platform aggregating Chinese government registration data and corporate records, and Baidu.com, China's leading and largest search engine and mapping systems, which compiles business information from authoritative national databases. *Id.* ¶¶ 5–7.

In addition to researching the listed addresses of these Defendants, Panoramic researched and attempted to identify each store's registered telephone number listed with the marketplace platform, or where a number was not listed, the telephone number identified through additional research tied to the listed physical addresses. *Id.* ¶ 8. Panoramic attempted to contact these Defendants at the listed telephone numbers, because businesses in China, India and Turkey that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in these countries will require a working phone number to ensure their service attempt can be completed. *Id.* ¶ 15. Similarly, it is very difficult to confirm the address for any business that does not provide or confirm its telephone number, since mailing services in these countries will be unable to confirm or verify the listed address without a telephone number. *Id.*

Based on Panoramic's investigation and extensive efforts to confirm the addresses of these defendants, none of the defendants utilizing the Amazon, eBay, Etsy, Shein and Walmart platforms have listed locations that can be verified and thus used to serve defendants at their listed location. *Id.* ¶¶ 10, 16. In particular, many of these Defendants listed telephone numbers that appear to have no relation to their business and suggest that their registered information is false, while other Defendants refused to provide any information about their location or their business—suggesting that these businesses will seek to avoid service efforts. *Id.* ¶¶ 10–14. Such stores cannot be reliably contacted or served because there is not an identifiable employee to contact and they will often close or hide once their illegal behavior is identified. *Id.* ¶¶ 10, 16.

Because Defendants provide incomplete or inaccurate information about their location and contact information, their locations are not known, and Plaintiffs will not be able to notify the Defendants of this action or serve them without using alternative methods of service. Absent the ability to serve Defendants in this manner, Plaintiffs will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have listed incorrect names and physical address information precisely for the purpose of concealing their locations and avoiding liability for their unlawful conduct. *See* Watanabe Decl. ¶ 24.

A number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props.*, 284 F.3d at 1018; *see also Google LLC*, 2026 WL 353660, at *1–2; (permitting alternative service by electronic means as part of a preliminary injunction); *Cengage Learning*, 2018 WL 2244461, at *5 (finding email service appropriate on defendants who provided no true names or physical addresses and thus were not known)); *Kelly Toys*, 2022 WL 3701216, at *9–10 (affirming electronic service on online retailers who hid their location was proper under Rule 4(f)(3)).

As such, federal courts, including in this District, have permitted alternative service of process in matters involving counterfeiting and trademark infringement. *See WowWee Grp. Ltd. v. Haoqin*, No. 17-cv-9893, 2019 WL 1316106, at *2 (S.D.N.Y. Mar. 22, 2019) (upholding electronic service on online merchants who were "anonymous individuals or businesses . . . that traffic in counterfeit goods" and whose identities consist of "only a username and corresponding email address"); *Cengage Learning*, 2018 WL 2244461, at *5 (permitting service by e-mail on foreign

defendants where defendants did not provide true legal names or physical addresses on their online storefronts).

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014–15. As the Ninth Circuit explained in *Rio Properties*, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* at 1015. As such, this Court may allow Plaintiffs to serve the Defendants via electronic publication and/or e-mail.

2. <u>Defendants' Infringements of Plaintiffs' Intellectual Property Create Exigent Circumstance for Service</u>

Further, the nature of Plaintiffs' claims—that anonymous online merchants are actively infringing upon their intellectual property—present exigent circumstances that justify alternative service upon the infringing defendants. Article 15 of the Hague Convention expressly permits a judge to order "in case of urgency, any provisional or protective measures," Hague Convention, Art. 15. The 1993 Advisory Committee Notes to Rule 4 expressly acknowledge that the Hague Convention does authorize "special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstance" and that "[i]n such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement." Fed. R. Civ. P. 4. Accordingly, in similar cases involving counterfeiting by foreign merchants operating online stores, courts in this District have

acknowledged the need for timely service and have permitted electronic service of certain documents and orders under Rule 4(f)(3). *See ABC v. DEF,* No. 24-cv-8341 (DLC), 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (acknowledging that ongoing counterfeit activity creates exigencies that justify e-mail service of temporary restraining order and related orders); *Intersell Ventures, LLC v. 1688 Factory Direct Store Store*, No. 25-cv-408, 2025 WL 485715, at *6 (S.D.N.Y. Feb. 11, 2025) (stating exigencies of online counterfeiting justified temporary restraining order permitted electronic service of order and related documents on all defendants); *Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*, No. 25-cv-2732 (MMG), 2025 WL 1276618, at *3 (S.D.N.Y. Apr. 29, 2025) (granting temporary restraining order against online merchants defendants and permitting electronic service of order on those defendants).

The proposed Temporary Restraining Order provides for issuance of a single original summons[11] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).

In summary, Plaintiffs respectfully submit that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections, if any. Plaintiffs, therefore, request permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

---

[11] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

## V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiffs submit that a bond in such amount is fair and reasonable under the circumstances and is consistent with the bond amounts required by courts in similar case. *See, e.g., Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *7 ($1,000 bond).

## VI. CONCLUSION

Plaintiffs' business, their KAWS brand, and consumers are being irreparably harmed by online counterfeiters. Without entry of the requested relief, the sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiffs. Therefore, entry of an *ex parte* order is necessary to protect Plaintiffs' copyright and trademark rights, to prevent further harm to Plaintiffs and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order in the form proposed and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiffs intend to present a motion for preliminary injunction.

Dated: April 13, 2026

Respectfully,

*/s/ Christopher Tom*
Christopher Tom
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Attorney for Plaintiffs KAWS INC. and KAWS STUDIO L.P.*